Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| BANCO POPULAR DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>JOSEPH PADILLA Y FAWN PADILLA; ambos por sí y como miembros de la SUCESIÓN DE LORENZA CRUZ MORALES y otros<br><br>Peticionarios | KLCE202301461 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Sobre: Ejecución de hipoteca<br><br>Caso Núm.: N3CI2011-0413 |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2024.

Comparecen ante nos, la *Sra. Fawn Raquel Padilla Laureano* y el *Sr. Joseph Thomas Padilla Laureano* (en adelante, "peticionarios") mediante el recurso de *certiorari* para que revoquemos la *Orden* dictada el 26 de octubre de 2023,[1] por el Tribunal de Primera Instancia, Sala Superior de Fajardo (en adelante, "TPI"), la cual resolvió que los cheques expedidos incluían el pago de intereses. Oportunamente, los peticionarios solicitaron reconsideración, sin embargo, dicha solicitud fue declarada *No ha lugar*.

Evaluado los hechos y el derecho aplicable, procedemos a **expedir** el auto de *certiorari* y **revocar** la determinación recurrida.

---

[1] Notificada el 30 de octubre de 2023.

**-I-**

El **1 de julio de 2011**, *Banco Popular de Puerto Rico* (en adelante, "BPPR") presentó una acción en cobro de dinero y ejecución de hipoteca contra la *Sra. Lorenza Cruz Morales* (en adelante, "señora Cruz Morales o causante").[2] Ante el fallecimiento de la señora Cruz Morales, la referida acción fue enmendada para acumular a los peticionarios como parte demandada por ser los herederos de la causante.[3]

Mediante *Sentencia en Rebeldía*, el TPI declaró *Con Lugar* la acción instada, y condenó el pago solidario de **$16,161.58** más intereses, costas y honorarios de abogados.[4]

Así, el **8 de enero de 2013** se celebró una subasta y la entidad *Inmobiliarias Nahiomy* fue el licitador vencedor, quien ofreció y consignó la suma de **$63,200.00**.[5] BPPR retiró su acreencia ($22,350.93), y la cantidad restante –**$40,849.07**– fue depositada en la unidad de cuentas del TPI.[6]

El **1 de octubre de 2018**, la *Oficina de Administración de Tribunales* (en adelante, "OAT") transfirió la suma de **$40,849.07** al Fondo 793 del área del Tesoro del *Departamento de Hacienda*.[7]

Entonces, el **1 de agosto de 2023** los peticionarios radicaron una *"Solicitud de Intervención; Moción Solicitando Orden de Retiro de Fondos"*,[8] para que se les entregara los fondos correspondientes y los intereses acumulados.

---

[2] Apéndice I de la *Petición de Certiorari*, págs. 1 – 4.
[3] Apéndice II de la *Petición de Certiorari*, págs. 5 – 8.
[4] Apéndice III de la *Petición de Certiorari*, págs. 9 – 12.
[5] Apéndice IV de la *Petición de Certiorari*, pág. 13.
[6] *Id.*
[7] Según alegan los peticionarios, en agosto de 2018 la OAT advirtió que transferiría al Departamento de Hacienda la suma de $40,849.07. Dicha acción, es cónsona con lo dispuesto en la Ley Núm. 38 del 26 de mayo de 1954, según enmendada, conocida como la *Ley para Transferir al Tesoro Estatal los Saldos en las Cuentas Bancarias de los Secretarios y Alguaciles de las Salas del Tribunal de Primera Instancia*, 4 LPRA sec. 363 *et. seq.*
[8] Apéndice V de la *Petición de Certiorari*, págs. 14 – 24.

Atendida la solicitud, el TPI emitió una *Orden* el **16 de agosto de 2023**,[9] y determinó lo siguiente:

> *[H]a lugar. Se ordena al Departamento de Hacienda devolver los fondos transferidos en el caso de epígrafe, es decir, la cantidad de $40,849.07 al Tribunal de Primera Instancia, Sala Superior de Fajardo.*
>
> *Una vez, los fondos sean transferidos por el Departamento de Hacienda, se ordena a la Unidad de Cuentas a expedir los siguientes cheques a favor de **FAWN RAQUEL PADILLA** por la cantidad de **$16,339.64**, **JOSEPH THOMAS PADILLA** por la cantidad de **$16,339.63** y **UNCLAIMED PROPERTY RECOVERY SERVICES, LLC** por la cantidad de **$8,169.80**. La cuenta ha generado intereses por la cantidad de **$900.88**, el cual será divido en partes iguales para cada uno de los sucesores, es decir **$450.44** a favor de FAWN RAQUEL PADILLA y **$450.44** a favor de JOSEPH THOMAS PADILLA, conforme el subsidiario emitido el 2 de agosto de 2023, más cualesquiera intereses devengados en el futuro.*
>
> *Para el desembolso de los intereses generados y los futuros, la parte demandante deber presentar el formulario OAT 229 Información del (de la) Depositante o Beneficiario(a) de Fondos Bajo Custodia del Tribunal (fondos generados bajo la Ley 69 de 14 de agosto de 1991), que será incluido por la Secretaría al notificar la presente Orden, lo completen y presenten en la Secretaría de este Tribunal con una copia de identificación vigente expedida por el Gobierno de Puerto Rico o de los Estados Unidos, en el término de diez (10) días calendario. […].*[10]

A tono con la Orden antes dicha, el **19 de octubre de 2023** los peticionarios sometieron una *"Moción Solicitando Liquidación de Intereses al Amparo de la Ley 69 del 14 de agosto de 1991"*.[11] Plantearon no conocer cómo la OAT calculó los intereses incluidos, mientras los fondos estuvieron bajo el depósito del TPI. Argumentaron, que tampoco fueron notificados por la OAT sobre el cargo que le cobraron por custodiar el dinero. Por lo cual, solicitaron que se les proporcionara la información correspondiente, y una vista evidenciaría.

El **26 de octubre de 2023**,[12] el TPI determinó: *"Nada que proveer. Conforme a la orden del 16 de agosto de 2023 los cheques expedidos incluyen el pago de intereses, no existe fondos consignados conforme certificación del 20 de octubre de 2023"*.[13]

---

[9] Apéndice VI de la *Petición de Certiorari*, págs. 25 – 27.
[10] *Id.*, pág. 26.
[11] Apéndice VII de la *Petición de Certiorari*, págs. 28 – 30.
[12] Notificada el 30 de octubre de 2023.
[13] Apéndice VIII de la *Petición de Certiorari*, págs. 31 – 32.

Inconformes, el **9 de noviembre de 2023** los peticionarios presentaron una solicitud de reconsideración e impugnaron los cargos cobrados a los beneficiarios.[14] Dicha solicitud, fue declarada *No ha lugar* el **21 de noviembre de 2023**.[15]

El **27 de diciembre de 2023**, los peticionarios recurrieron ante este Foro apelativo, mediante el recurso de *certiorari* y señalaron los siguientes errores:

> *Primer señalamiento de error: Erró y abusó de su discreción el TPI al denegar la solicitud de los beneficiarios de que se les entregara toda la evidencia utilizada para calcular los intereses devengados por sus fondos.*
>
> *Segundo señalamiento de error: Erró y abusó de su discreción el TPI al denegar la solicitud de los beneficiarios de que la OAT informara a cuanto ascendió el cargo que les cobró por retener su dinero y para que proveyera el documento que sirve de base legal para la imposición de un cargo de 15% de los intereses devengados.*

El **10 de enero de 2024** emitimos una *Resolución,* en la cual se le concedió un término de diez (10) días a la parte recurrida para mostrar causa por la cual no debamos expedir el auto de *certiorari.* Transcurrido el plazo sin la comparecencia de los recurridos, damos por sometido el asunto.

-II-

-A-

El Tribunal Supremo de Puerto Rico ha señalado que el auto de *certiorari* constituye *"un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior".*[16] Por discreción se entiende el *"tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción".*[17]

---

[14] Apéndice IX de la *Petición de Certiorari*, págs. 33 – 36.
[15] Notificada el 1 de diciembre de 2023. Véase, Apéndice X de la *Petición de Certiorari*, págs. 37 – 39.
[16] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 711 (2019).; *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 – 338 (2012).
[17] *García v. Asociación,* 165 DPR 311, 321 (2005).

Por su parte, la Regla 52.1 de Procedimiento Civil,[18] delimita las instancias en que habremos de atender y revisar mediante *certiorari* las resoluciones y órdenes emitidas por los tribunales de instancia, a saber:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. […].*[19]

Con el objetivo de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional —de entender o no en los méritos— el asunto esbozado en el *certiorari*, nuestros oficios encuentran criterios en la Regla 40 del Reglamento del Tribunal de Apelaciones:[20]

> *El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:*
> *(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
> *(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
> *(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
> *(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
> *(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
> *(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

---

[18] Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1.
[19] *Id.*
[20] Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40.

> *(G) Si la expedición del auto o de la orden de mostrar*
> *causa evita un fracaso de la justicia.* [21]

Por lo que, al contar con la discreción judicial, este foro intermedio se reserva el expedir o denegar el auto de *certiorari*. Nuestro Alto Foro Judicial ha dispuesto que:

> *[d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.* [22]

De manera, que si la actuación del foro recurrido no está desprovista de base razonable ni perjudica los derechos sustanciales de las partes, deberá prevalecer el criterio del juez de primera instancia a quien le corresponde la dirección del proceso. [23]

**-B-**

Pertinente a la controversia que nos atañe, la Ley Núm. 69 de 14 de agosto de 1991, según enmendada y conocida como la *Ley para Regular los Depósitos de Fondos Públicos y para Proveer sobre su Seguridad,* autoriza a la Rama Judicial —ahora Poder Judicial— a negociar con cualquier banco el pago de intereses que habrá de recibir sobre sus depósitos provenientes de fondos públicos. [24] Específicamente, la Sección 3.3 establece que:

> *La Rama Judicial a través del Juez Presidente del Tribunal Supremo o del Director Administrativo de los Tribunales por delegación de éste podrá suscribir convenios con cualquier banco designado como depositario de fondos públicos para acordar los intereses que habrá de recibir por concepto de los fondos depositados en cuentas bancarias, los cuales podrán exceder el interés fijado en los contratos negociados a tenor con las Secciones 3.1 y 3.2 de esta ley y cualesquiera otras condiciones, servicios o prestaciones dirigidas al mejoramiento de los servicios que la Rama*

---

[21] *Id.*

[22] *Id.*; *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).; *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[23] *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 434 – 435 (2013).

[24] Ley Núm. 69 de 14 de agosto de 1991, según enmendada conocida como la *Ley para Regular los Depósitos de Fondos Públicos y para Proveer sobre su Seguridad*, 7 LPRA sec. 251 *et. seq.*

Cabe destacar que el 28 de julio de 2011, la entonces Director Administrativo de los Tribunales emitió la Carta Circular Núm. 23, Año Fiscal 2010 – 2011, para establecer las Normas para la Selección de las Instituciones Bancarias que proveerán los Servicios Bancarios correspondiente a las Cuentas donde se depositarán Fondos Pendientes o Bajo Custodia y Control del Tribunal General de Justicia.

*Judicial presta a la ciudadanía relacionados con el manejo de fondos. Dichos convenios garantizarán el que se ponga en riesgo la liquidez y solvencia de la Rama Judicial.*[25]

No obstante, en el siguiente párrafo de la citada Sección 3.3, hace una distinción entre los ***fondos públicos y otros fondos depositados*** en las cuentas bancarias; a saber:

> *Cuando se trate de **fondos públicos**, el producto de dichos intereses podrá ser depositado por la Rama Judicial en cuentas especiales separadas en las instituciones bancaria de su selección que estén cobijadas por esta ley. **En el caso de intereses sobre <u>otros fondos</u> que estén bajo su custodia, depositados en cualquier tipo de cuenta bancaria, la Rama Judicial mediante reglamento que adopte el Juez Presidente del Tribunal Supremo o el Director Administrativo de los Tribunales por delegación de éste, podrá determinar la porción razonable de esos intereses que podrá depositar en las cuentas especiales antes mencionadas, para cubrir los gastos y otras responsabilidades en que incurre dicha Rama por el servicio de recibo, contabilidad, control, custodia y entrega de estos depósitos y para aportar el financiamiento de sus proyectos especiales**.*[26]

Nótese, que cuando sean **fondos públicos**, el producto de esos intereses podrá ser depositado por la Rama Judicial en cuentas especiales separadas en los bancos de su selección que estén acogidas por esta ley. Ahora, sobre los intereses de **otros fondos** bajo custodia de la Rama Judicial que estén depositados en cualquier tipo de cuenta bancaria, la referida Sección 3.3 ordena que —mediante reglamento que adopte el Juez Presidente del Tribunal Supremo o el Director Administrativo de los Tribunales por delegación de éste— podrá determinar la **porción razonable de esos intereses** que podrá depositar en las cuentas especiales, para cubrir los gastos y otras responsabilidades en que incurre la Rama referente a estos depósitos.[27]

Cabe mencionar que en dicha Sección 3.3, el *Departamento de Hacienda* recibe los recursos que producen los depósitos aquí considerados, a base del interés acordado de 1/20 del uno por ciento

---

[25] 7 LPRA sec. 253b.
[26] *Id.* Énfasis nuestro.
[27] *Id. Énfasis nuestro.*

(1%) anual en cuentas corrientes. Sin embargo, el exceso negociable pasará a formar parte de la Rama Judicial.[28]

Así, el 20 de diciembre de 1991 el Poder Judicial estableció el ***REGLAMENTO DE LA RAMA JUDICIAL PARA LA ADMINISTRACI[Ó]N DE FONDOS E INTERESES CONFORME A LA LEY N[Ú]M. 69 DE 14 DE AGOSTO DE 1991***,[29] (en adelante, "*Reglamento de Manejo de Fondos e Intereses*").[30]

El Artículo VII, inciso C del *Reglamento de Manejo de Fondos e Intereses,* dispone lo siguiente en cuanto al ***interés de otros fondos***. En lo pertinente, expresa:

> *1. La Rama retendrá una cantidad razonable de los intereses que devenguen los Otros Fondos que deposite, la cual no excederá la porción que de tiempo en tiempo se determine es atribuible a los gastos y otras responsabilidades en que incurra por el servicio de recibo, contabilidad, control, custodia y entrega de los fondos y para aportar al financiamiento de sus proyectos especiales. Esta porción podrá recobrarse al aplicar un determinado por ciento al interés devengado sobre los fondos o por otra fórmula que establezca el Director.*
>
> *2. El remanente de los intereses devengados por Otros Fondos se entregará a sus dueños una vez cese la custodia y manejo de la Rama, mediante el procedimiento que el Director establezca. Salvo orden judicial en contrario, los intereses se pagarán a favor de los dueños de los fondos depositados en la Rama.*
>
> *3. Se pagarán intereses sobre el dinero depositado en las cuentas de Otros Fondos hasta la fecha de la devolución de las mismas. Cualquier interés devengado, posterior a la fecha de dicha devolución, ingresará a la cuenta especial de intereses de la Rama.*
>
> *[...]*
>
> *5. Los intereses devengados en la cuenta especial del Secretario donde se depositan aquellos fondos cuyo fin o el paradero del remitente o la persona a quien deben entregarse se desconocen, se depositarán en su totalidad en la cuenta especial de intereses para uso y a favor de la Rama. En aquellos casos en que se determine la entrega de dichos fondos, se sumará a la cantidad inicialmente depositada los*

---

[28] *Id.* Sobre este particular el *Reglamento de la Rama Judicial para la Administración de Fondos e Intereses conforme a la Ley Núm. 69 de agosto de 1991, infra,* añade en el Artículo VII que:

> **A. Pago de Intereses a favor del Secretario de Hacienda**
> *La Rama velará porque se efectúe el pago al Secretario de Hacienda del interés de un veintavo (1/20) del uno por ciento (1%) anual sobre los fondos depositados en cuentas corrientes a tenor con la Sección 3.3 la Ley.*

[29] *Reglamento de la Rama Judicial para la Administración de Fondos e Intereses conforme a la Ley Núm. 69 de agosto de 1991*, Tribunal General de Justicia – Oficina de Administración de Tribunales, 20 de diciembre de 1991.

[30] El 14 de julio de 2009, la entonces Director Administrativo de los Tribunales emitió la Carta Circular Núm. 3, Año Fiscal 2099 – 2010, para enmendar el Artículo X sobre Auditorías.

*interes devengados a tenor con lo dispuesto en este Reglamento en cuanto a intereses sobre otros fondos.*

*6. Los intereses devengados por los fondos correspondientes a saldos inactivos se computarán hasta la fecha en que se remitan al Secretario de Hacienda, luego de descontadas las porciones que correspondan a tenor con La Ley y reglamentación aplicable.*[31]

Sobre la **revisión de los intereses**, el Artículo VII, inciso D del *Reglamento de Manejo de Fondos e Intereses* establece que: una persona podrá solicitarle al Director Administrativo de los Tribunales la revisión de los intereses recibidos mediante la solicitud de una revisión escrita presentada durante el término de quince (15) días calendarios a partir de la notificación del pago. Dicha solicitud deberá expresar los fundamentos en que se basa, y será presentada en la Secretaría de la sala del TPI donde se efectuó el depósito de los fondos.[32]

Finalmente, el 6 de abril de 2022 la OAT emitió la Carta Circular Núm. 32 para el Año Fiscal 2021 – 2022, titulada ***Normas y Procedimientos para el Pago De Intereses a los (las) Beneficiarios(as) conforme a la Ley Núm. 69 De 14 de agosto de 1991***,[33] (en adelante, "*Normas y Procedimientos para el Pago de Intereses*"). Entre otros, tiene el propósito de optimizar el proceso de pago de intereses correspondiente a los fondos de personas privadas que son depositados en las cuentas de Fondo en Custodia por el Tribunal (Secretaría y Alguacil).[34]

Para ello, las *Normas y Procedimientos para el Pago de Intereses* identifica a *CUCANET Enterprise* como el sistema de contabilidad utilizado para el cómputo y el pago de los intereses correspondiente a la Ley Núm. 69 – 1991.[35] También, las referidas

---

[31] Artículo VII del *Reglamento de la Rama Judicial para la Administración de Fondos e Intereses conforme a la Ley Núm. 69 de agosto de 1991,* págs. 9 – 11.
[32] *Id.*, a la pág. 11.
[33] Carta Circular Núm. 32 para el Año Fiscal 2021 – 2022, Poder Judicial de Puerto Rico – Oficina de Administración de los Tribunales, *Normas y Procedimientos para el Pago de Intereses a los (las) Beneficiarios(as) Conforme a la Ley Núm. 69 de 14 de agosto de 1991,* 6 de abril de 2022.
[34] Artículo IV al inciso (A), *Normas y Procedimientos para el Pago de Intereses.*
[35] Artículo VI al inciso (B), *Id.*

normas establecen que, si una persona no se encuentra conforme con el pago de intereses objeto de una orden judicial, <u>presentará su reclamo ante el tribunal que dispuso la emisión del pago</u>.[36]

**-III-**

En suma, la cantidad depositada de **$40,849.07** devengó intereses durante ese tiempo por **$900.88**. Los peticionarios indican que el TPI incidió al denegarle la entrega de la evidencia utilizada para calcular los intereses devengados de sus fondos y, al sostener la negativa para que los funcionarios judiciales informaran a cuánto ascendió el cargo que les cobró el Poder Judicial por retener su dinero e imponer un cargo del 15% de los intereses devengados sin documentación que sirviera como base legal.

Conforme al *Reglamento de Manejo de Fondos e Intereses,* y, las *Normas y Procedimientos para el Pago de Intereses,* antes expuestos, si los beneficiarios no se encuentran conformes con la cantidad de los intereses, podrán presentar un reclamo ante el TPI que ordenó la emisión del pago. En ese sentido, los peticionarios correctamente presentaron una reclamación —en este caso una impugnación— por no estar conforme con los intereses pagados que ordenó el TPI.

Por lo tanto, ante el reclamo de los peticionarios, le correspondía al foro recurrido solicitar al Director Administrativo de los Tribunales la información referente a los intereses generados por la cuantía custodiada, y utilizando dicha información, aclarar las interrogantes sobre los intereses generados. Al no hacerlo, el TPI contravino el derecho antes esbozado.

En consecuencia, debemos expedir el auto de *certiorari* solicitado y revocar la determinación recurrida. En ese sentido, ordenamos al TPI a celebrar una vista evidenciaría en la cual se

---

[36] Artículo VII al inciso (K), *Id.*

**desglose y transparente** cómo la cantidad depositada de **$40,849.07** generó durante ese tiempo **$900.88** en intereses, conforme lo dispuesto en la Ley Núm. 69-1991, el Reglamento y Normas antes citadas.

Ello permitirá al TPI a emitir y notificar una resolución **transparente**, de la cual surja la cuantía correspondiente a la suma depositada, los intereses acumulados durante ese tiempo, gastos incurridos por el Poder Judicial y el detalle de su cómputo a fin de que se constate su corrección.

### -IV-

Cónsono con lo anterior, procedemos a **expedir** el auto de *certiorari* y **revocar** la determinación recurrida a los fines de ordenar al TPI que celebre una vista evidenciaria conforme a esta determinación.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones